January 12, 2007

Mr. C. Tom Clowe, Jr., Chair
Texas Lottery Commission
Post Office Box 16630
Austin, Texas 78761-6630

Opinion No. GA-0499

Re: Whether Occupations Code section 2001.458(b) prohibits a licensed authorized organization from paying or incurring an expense in connection with the conduct of bingo to provide health care insurance or a health benefit for its employees or their dependents (RQ-0499-GA)

Dear Mr. Clowe:

As chair of the Texas Lottery Commission (the "Commission"), you ask whether Occupations Code section 2001.458(b) prohibits a licensed authorized organization from paying or incurring an expense in connection with the conduct of bingo to provide health care insurance or a health benefit for its employees or their dependents.[1]

The Bingo Enabling Act (the "Act"), Occupations Code chapter 2001, charges the Commission with administering the Act and requires the Commission to "exercise strict control and close supervision over all bingo conducted in this state so that bingo is fairly conducted and the proceeds derived from bingo are used for an authorized purpose." TEX. OCC. CODE ANN. § 2001.051(a)–(b) (Vernon 2004); see id. § 2001.001; see also id. § 2001.002(4), (8) (defining the terms "bingo" and "commission"). The Act thus authorizes the Commission to issue to eligible authorized organizations licenses to conduct bingo and prohibits persons "other than a bona fide member of a licensed authorized organization" from conducting, promoting, administering, or assisting in conducting, promoting, or administering bingo. Id. §§ 2001.101(a), .411(a). The Commission may suspend or revoke a license to conduct bingo for failure to comply with the Act or a Commission rule. See id. § 2001.353(1); see also id. § 2001.054 (authorizing the Commission to "adopt rules to enforce and administer" the Act).

A licensed authorized organization is implicitly authorized to hire individuals who are not members of the organization to work as "a bookkeeper, an accountant, a cashier, an usher, or a caller." Id. § 2001.411(c)(5); see also id. § 2001.4115 (authorizing "[t]wo or more licensed

---

[1]See Letter from C. Tom Clowe, Jr., Chair, Texas Lottery Commission, to Honorable Greg Abbott, Attorney General of Texas, at 2 (June 6, 2006) (on file with the Opinion Committee, also available at http://www.oag.state.tx.us) [hereinafter Request Letter].

authorized organizations" that conduct bingo at the same location to "jointly hire bingo employees"). The Commission's rules recognize that a licensed authorized organization may employ persons in certain positions—operator, manager, cashier, usher, caller, and salesperson—and permit an organization to hire only persons who have registered with the Commission. *See* 16 TEX. ADMIN. CODE § 402.402(b) (2006) (Texas Lottery Commission, Registry of Bingo Workers); *see also id.* § 402.402(a) (defining terms).

Chapter 2001, subchapter J provides in detail for the disposition of bingo proceeds. *Cf.* TEX. OCC. CODE ANN. ch. 2001, subch. I-1 (Vernon 2004) (providing for accounting by two or more licensed authorized organizations that conduct bingo at the same location and join together to share revenues and authorized expenses). Under section 2001.451(a), a licensed authorized organization must establish and maintain a regular checking account, denoted the "bingo account," and an interest-bearing savings account, denoted the "bingo savings account." *Id.* § 2001.451(a). The organization must deposit in the bingo account all funds derived from the conduct of bingo, "less the amount awarded as cash prizes." *Id.* § 2001.451(b). Section 2001.453 restricts a licensed authorized organization's use of funds in the bingo account:

> (a) A licensed authorized organization may draw a check on its bingo account only for:
>
> (1) the payment of necessary and reasonable bona fide expenses, including compensation of personnel, as permitted under Section 2001.458 incurred and paid in connection with the conduct of bingo;
>
> (2) the disbursement of net proceeds derived from the conduct of bingo to charitable purposes; or
>
> (3) the transfer of net proceeds derived from the conduct of bingo to the organization's bingo savings account pending a disbursement to a charitable purpose.

*Id.* § 2001.453(a); *see also id.* §§ 2001.002(7), .454, .457(a) (defining "charitable purposes" and requiring a licensed authorized organization quarterly to disburse at least 35% of adjusted gross receipts for charitable purposes); *cf. id.* § 2001.456 (prohibiting the use of proceeds for political purposes). Section 2001.458, which is particularly at issue in your request, sets out permissible expenses that a licensed authorized organization may incur and pay:

> (a) An item of expense may not be incurred or paid in connection with the conduct of bingo except an expense that is reasonable or necessary to conduct bingo, including an expense for:
>
> (1) advertising . . . ;

(2) security;

(3) repairs to premises and equipment;

(4) bingo supplies and equipment;

(5) prizes;

(6) stated rental or mortgage and insurance expenses;

(7) bookkeeping, legal, or accounting services related to bingo;

(8) fees for callers, cashiers, ushers, janitorial services, and utility supplies and services;

(9) license fees;

(10) attending a [required] bingo seminar or convention . . . ; and

(11) debit card transaction fees.

(b) *The value of health insurance or a health benefit provided by a licensed authorized organization to an employee is not included under Subsection (a)(8).*

*Id.* § 2001.458 (emphasis added); *cf. id.* § 2001.4115 (authorizing organizations who jointly hire employees to pay a share of the employees' "compensation and other employment-related costs"). Finally, section 2001.459(a)(7) requires a licensed authorized organization to pay from its bingo account "fees for callers, cashiers, and ushers." *Id.* § 2001.459(a)(7).

You suggest that section 2001.458(b) may be read in two ways: On the one hand, subsection (b) "appears to prohibit a licensed authorized organization from paying or incurring an expense . . . for providing dependent health care insurance or a health benefit for its employees," but on the other hand, subsection (b) "can also be interpreted to mean that such an expense is allowable but distinct from the subsection (8) expenses to which it refers." Request Letter, *supra* note 1, at 1. In your view, the ambiguity may have arisen as the result of the 1999 codification of the Bingo Enabling Act, including section 2001.458(b), which the Legislature intended to be nonsubstantive. *See id.* at 2; *see also* TEX. OCC. CODE ANN. § 2001.001 (Vernon 2004) (titling the Act); Act of May 13, 1999, 76th Leg., R.S., ch. 388, §§ 1, 7, 1999 Tex. Gen. Laws 1431, 2319–59, 2440 (adopting the Occupations Code and indicating that the codification was nonsubstantive).

In a 1999 decision captioned *Fleming Foods of Texas v. Rylander* the Texas Supreme Court considered the possibility that a nonsubstantive codification actually had revised a statute's substance. *See Fleming Foods of Tex. v. Rylander*, 6 S.W.3d 278, 283–86 (Tex. 1999). The court in *Fleming Foods* addressed an apparently inadvertent omission of significant language from a nonsubstantive codification of the Tax Code. *See id.* at 283. According to *Fleming Foods*, when a specific provision of a purportedly nonsubstantive codification is "direct, unambiguous, and cannot be reconciled with prior law," the codification, "rather than the prior, repealed statute," must be effectuated. *Id.* at 286. On the other hand, if a provision in the codification is ambiguous, a court will examine the predecessor law to determine the statute's meaning. *See id.* at 287.

Section 2001.458 is not ambiguous. Subsection (a) strictly limits a licensed authorized organization to incur or pay only those expenses that are "reasonable or necessary to conduct bingo." TEX. OCC. CODE ANN. § 2001.458(a) (Vernon 2004). Subsection (a) then specifically lists items that are included within those reasonable or necessary expenses. *See id.* The list is inclusive, not exclusive, and thus subsection (a) does not prohibit the incursion or payment of unlisted expenses that are "reasonable or necessary." *Id.*; *see also* TEX. GOV'T CODE ANN. § 311.005(13) (Vernon 2005) (defining the term "include" as a "term[] of enlargement and not of limitation or exclusive enumeration"). *But see Jackson Law Office v. Chappell*, 37 S.W.3d 15, 25–26 (Tex. App.—Tyler 2000, pet. denied) (stating that a statutory list following the term "includes" or "including" is "for purposes of illustration"); Tex. Att'y Gen. Op. No. JC-0410 (2001) at 3 (applying the doctrine of *ejusdem generis* to limit the items within an illustrative list signaled by the term "include"); *cf. County of Harris v. Eaton*, 573 S.W.2d 177, 178–79 (Tex. 1978) (construing the phrase "such as" in a statute listing "special defects such as . . ." in light of the *ejusdem generis* doctrine to "include those defects of the same kind or class as the ones expressly mentioned").

In this case, however, the Legislature has determined that employees' health insurance costs are not reasonable or necessary expenses related to the conduct of bingo that a licensed authorized organization may incur or pay from its bingo account, and subsection (b)'s plain language effectuates that intent. *See* TEX. OCC. CODE ANN. § 2001.458(b) (Vernon 2004). Subsection (b) expressly excepts from subsection (a)(8)'s list of permissible fees "[t]he value of health insurance or a health benefit provided . . . to an employee." *Id.* If, as you say, this means simply that the costs of health insurance and benefits may not be included in the fees listed in subsection (a)(8) but may be "allowable," then subsection (b) has no meaning: Without subsection (b), health insurance and benefits might be allowable as a reasonable or necessary cost that is similar to the expenses expressly listed. Request Letter, *supra* note 1, at 1; *cf.* TEX. GOV'T CODE ANN. § 311.021(2), (4) (Vernon 2005) (stating that in enacting a statute the Legislature intends the entire statute to be effective and to achieve a result that is feasible of execution). And you make no argument that classifying health insurance and benefits expenses as fees within subsection (a)(8) or as some other type of reasonable or necessary expense is significant for purposes of paying the expenses.

We find no obvious error in section 2001.458's unambiguous language, nor do we find that construing section 2001.458 consistently with its plain language leads to an absurd result. Rather, section 2001.458(b) is entirely consistent with the Act's strict regulation of allowable expenses to ensure that bingo-derived proceeds are generally "devote[d] to" the licensed authorized

organization's charitable purposes. TEX. OCC. CODE ANN. § 2001.454(a) (Vernon 2004). Because we have found that the language of the current statute is unambiguous, has no obvious error, and does not produce an absurd result, we may not consider whether the pre-codified statute had a different meaning. *See Fleming Foods of Tex.*, 6 S.W.3d at 286.

Consequently, we conclude, consistently with the language the Legislature has chosen, that section 2001.458(b) forbids the incursion or payment of expenses from a bingo account for "[t]he value of health insurance or a health benefit provided . . . to an employee." TEX. OCC. CODE ANN. § 2001.458(b) (Vernon 2004). Health insurance or benefits provided to an employee's dependents are likewise forbidden.

## S U M M A R Y

Occupations Code section 2001.458(b) prohibits an authorized organization licensed to conduct bingo games from incurring or paying from a bingo account the costs of health insurance or benefits for the organization's employees or their dependents.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

KENT C. SULLIVAN
First Assistant Attorney General

ELLEN L. WITT
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

Kymberly K. Oltrogge
Assistant Attorney General, Opinion Committee